UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PADAM LAL OLI, | No. 1:26-cv-00477-DJC-AC |
| Petitioner, | |
| v. | ORDER |
| TONYA ANDREWS, et al., | |
| Respondents. | |

Petitioner is a noncitizen who was paroled into the United States in 2024. (Mot. (ECF No. 2) at 5.) A year later, Petitioner appeared at an Immigration and Customs Enforcement ("ICE") office for a check-in and was detained, purportedly pursuant to 8 U.S.C. § 1225(b). (*Id.*; Opp'n (ECF No. 8) at 1.) On January 20, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus along with a Motion for Temporary Restraining Order, arguing his present detention is unlawful and seeking release. (ECF Nos. 1, 2.) For the reasons stated below, Petitioner's Motion is granted.

**BACKGROUND**

Petitioner is a noncitizen from Nepal who entered the United States in July of 2024. (Mot. at 4–5.) Petitioner was then detained, and an officer conducted a credible fear interview. (Pet. (ECF No. 1) ¶ 24.) Though the ICE officer initially found Petitioner did not have a credible fear claim, an Immigration Judge vacated that decision,

1

finding he did have a credible fear.  (Adhikari Decl. (ECF No. 2-1), Ex. 4 at 3.)  On September 13, 2024, Petitioner was released on parole pursuant to 8 U.S.C. § 1182(d)(5), which allows for the parole of noncitizens for "urgent humanitarian reasons."  (Mot. at 5; 8 U.S.C. § 1182(d)(5)(A).)  Petitioner has since filed an application for asylum.  (Pet. ¶ 32.)

While paroled, Petitioner regularly appeared for check-ins at an ICE office. (Mot. at 5.)  On September 12, 2025, Petitioner appeared for one such appointment, and ICE immediately detained him.  (*Id.*)

Petitioner filed a Petition for a Writ of Habeas Corpus and a Motion for Temporary Restraining Order.  (ECF Nos. 1, 2.)  Briefing on the Motion for Temporary Restraining Order is now complete.  (Mot. (ECF No. 2); Opp'n (ECF No. 8); Reply (ECF No 10).)  The Court ordered this matter submitted without oral argument.  (*See* ECF No. 4.)

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical."  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted).  The Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of

likelihood of success.  *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

**DISCUSSION**

**I.  Likelihood of Success on the Merits**

**A.  Applicable Statutory Framework**

The Government argues Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  (Opp'n at 3.)  However, Petitioner was initially released from custody on parole pursuant to 8 U.S.C. § 1182(d)(5).  (Mot. at 5.)  Therefore, Petitioner is subject to the rights and procedures attendant to that provision.

As a threshold matter, Respondents did not validly revoke Petitioner's parole.  Under section 1182(d)(5)(A), "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [designated officials] neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen] and he or she shall be restored to the status that he or she had at the time of parole."  8 C.F.R. § 212.5(e)(2)(i).  Moreover, due process entitled Petitioner to notice and an opportunity to be heard in the revocation of his section 1182 parole.  *Noori v. LaRose*, No. 3:25-cv-01824-GPC-MSB, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025) (holding "Petitioner was entitled to due process in his parole revocation [including] notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination"); *Araujo v. LaRose*, No. 3:25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (explaining "[d]ue process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination").  Petitioner asserts, and Respondents do not contest, that Petitioner did not receive any written notice or opportunity to be heard.  (Mot. at 8, 12; *see generally*

Opp'n.)  Therefore, on this record, it appears Respondents did not validly revoke Petitioner's parole such that he would be subject to detention under section 1225.

### B. Due Process

However, even if section 1225 applies to Petitioner, the argument that "§ 1225(b) divests petitioner of any liberty interest for purposes of the Due Process Clause is unpersuasive." *Fernandez Lopez v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025).  By re-detaining Petitioner without providing a bond hearing, the Government has violated his due process rights.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  While noncitizens located outside the United States are not granted the full protection of the Constitution, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Id.* at 690.  To determine if Petitioner's due process rights have been violated, the Court must answer two questions: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025).

### 1. Petitioner has a Protected Liberty Interest.

A protected liberty interest can arise from a conditional release from physical restraint.  *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when the Government initially has the discretion to detain or release someone from custody, once the

Government decides to release them, that individual gains a constitutionally protected liberty interest in remaining out of custody. *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972). Therefore, by releasing Petitioner on parole pursuant to 8 U.S.C. § 1182(d)(5)(A), the Government endowed Petitioner with a protected liberty interest. *Fernandez*, 2025 WL 2959319, at *5 (holding noncitizen paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) had a protected liberty interest in remaining out of custody); *see also Garcia v. Andrews*, No. 1:25-cv-01006-JLT-SAB, 2025 WL 2420068, at *10 (E.D. Cal. Aug. 21, 2025) (holding noncitizen released on parole held a protected liberty interest in maintaining out-of-custody status); *J.E.H.G. v. Chesnut*, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *9 (E.D. Cal. Dec. 9, 2025) (same).

**2. Petitioner is Entitled to a Pre-Deprivation Bond Hearing.**

Having established that Petitioner has a protected liberty interest, the Court must now determine what process is due. The Court considers three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Petitioner has remained out of custody for over a year. (Mot. at 5.) Petitioner's release has permitted him to build a life within the bounds of the conditions imposed by his release. Petitioner has a substantial private interest in living out of custody, and his detention denies him that liberty interest. *See Zadvydas*, 533 U.S. at 690.

The risk of erroneous deprivation is also considerable. Petitioner has not received a bond hearing. (Mot. at 5.) Civil immigration detention is "nonpunitive in

purpose and effect" and, therefore, only justified when a noncitizen is a flight risk or danger to the community. *Zadvydas*, 533 U.S. at 690. Respondents do not assert that Petitioner presents either risk. (*See generally* Opp'n.) It is undisputed that Petitioner does not have a criminal record. (Mot. at 9; *see generally* Opp'n.) While the parties dispute whether Petitioner has complied with all the terms of his release (*compare* Pet. ¶ 4 *with* Opp'n at 1), Respondents have not presented any supporting evidence nor argued that these alleged violations render him a flight risk or danger to the community. Thus, the value of additional procedural safeguards is substantial.

Finally, Respondents' interest in detention is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *see Hernandez*, 872 F.3d at 994. The effort and cost required to provide Petitioner with procedural safeguards are minimal.

\* \* \*

Having found that Petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process, and that process should have been afforded to him prior to detention, the Court finds that Petitioner has established a likelihood of success on the merits of his due process claim.

## II. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities." *Hernandez*, 872 F.3d at 995. More broadly, the Ninth Circuit has also acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Id*. Petitioner has thus established irreparable harm.

## III. Balance of the Harms & the Public Interest

The final two *Winter* factors merge when the Government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The interests of equity and the public weigh in favor of Petitioner here. As discussed above, Petitioner is harmed

by his ongoing detention.  A temporary restraining order also inflicts minimal harm to the Government.  Though Respondents have an interest in enforcing immigration laws, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).  "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022).  There also appears to be no dispute as to Petitioner's risk of flight or danger to the community.  For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

**IV. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is converted to a Motion for Preliminary Injunction and is GRANTED.

2. Petitioner Padam Lal Oli shall be released immediately from Respondents' custody.  Respondents shall not impose any additional

7

restrictions on him, unless they are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating his arrest and detention – and a timely hearing.  At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have his counsel present.[1]

4. This matter is referred to the assigned Magistrate Judge for all further pretrial proceedings, see L.R. 302(c)(17), with the exception of any motion to modify the terms of this Order.

IT IS SO ORDERED.

Dated:   **January 30, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Oli26cv00477.tro

---

[1] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here.  See, e.g., Pablo Sequen v. Albarran, --- F.Supp.3d ----, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); Castellon v. Kaiser, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).